IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| A.D. and R.D., *individually and on behalf of their son*, S.D., *a minor*,<br><br>                  Plaintiffs,<br><br>     v.<br><br>HADDON HEIGHTS BOARD OF EDUCATION,<br><br>                  Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-1880 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Sarah E. Zuba, Esq.
Judith A. Gran, Esq.
FREEMAN CAROLLA REISMAN & GRAN LLC
19 Chestnut Street
Haddonfield, N.J. 08033
     Attorney for Plaintiff S.D.

William S. Donio, Esq.
COOPER LEVENSON, P.A.
1125 Atlantic Avenue, Third Floor
Atlantic City, N.J. 08401-4891
     -and-
Joseph F. Betley, Esq.
CAPEHART & SCATCHARD, P.A.
Laurel Corporate Center Suite 300
8000 Midlantic Drive – C.S. 5016
Mount Laurel, N.J. 08054
     Attorneys for Defendant

**SIMANDLE, Chief Judge:**

## I. INTRODUCTION

     In this action, Plaintiffs A.D. and R.D., individually and on behalf of their son, S.D. (hereinafter, "S.D." and

collectively, "Plaintiffs") allege that Defendant the Haddon Heights Board of Education (hereinafter, "Defendant") failed to comply with its statutory obligations to provide S.D., a student with a disability, with a free and appropriate education (hereinafter, "FAPE"), and enacted an attendance policy that deprived S.D. of an education equivalent to that provided to his nondisabled peers.  Plaintiffs therefore allege that Defendant violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. (hereinafter, "RA"), Title II of the Americans with Disabilities Act, 49 U.S.C. § 12132, et seq. (hereinafter, the "ADA"), the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and New Jersey's Law Against Discrimination, N.J.S.A. §§ 10:5-12, et seq. (hereinafter, "NJLAD").

Defendant now moves to dismiss Plaintiffs' Amended Complaint on an array of jurisdictional and substantive grounds. (Def.'s Br. [Docket Item 32-2].)  First, Defendant asserts that the parties' July 2014 Settlement Agreement and Defendant's subsequent accommodations have rendered Plaintiffs' claims moot and/or premature for adjudication, thereby depriving the Court of subject matter jurisdiction. (Id. at 9-13.)  Second, because Plaintiffs seek relief available under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (hereinafter, the "IDEA"), Defendant insists that Plaintiffs

2

must comply with the IDEA's administrative process, despite the fact that Plaintiffs only assert non-IDEA claims.  Because Plaintiffs indisputably failed to exhaust the IDEA's administrative remedies, Defendant therefore argues that Plaintiffs' claims must be dismissed for failure to exhaust. (Id. at 16-22.)  Lastly, Defendant seeks dismissal of Plaintiffs' claims on the merits because Plaintiffs purportedly have not and cannot show that Defendant discriminated against, or acted deliberately indifferent towards, S.D. on account of his disability.  (Id. at 23-34.)

Plaintiffs, however, dispute the Settlement Agreement's effect on the justiciability of their claims, and argue that the terms of the Agreement served to "inflict further discrimination," rather than to redress the allegations set forth in Plaintiffs' Amended Complaint.  (Pls.' Opp'n [Docket Item 37], 5-9.)  In addition, Plaintiff asserts that the exhaustion requirements of the IDEA have no application to this litigation, because Plaintiffs do not—and cannot—claim entitlement to relief under the IDEA.  (Id. at 10-14.)  Finally, Plaintiffs argue that Defendant's motion should be rejected with respect to its substantive challenges to Plaintiffs' claims, primarily because such challenges rely upon a "conjure[d]" version of facts entirely different to those averred in the Amended Complaint. (Id. at 15-30.)

3

The principal issues before the Court are whether the parties' July 2014 Settlement Agreement impacted Plaintiffs' standing to pursue their claims; and whether, in this non-IDEA action, the nature of Plaintiffs' claims nevertheless require compliance with the IDEA's administrative exhaustion process.

For the reasons that follow, Defendant's motion will be granted on exhaustion grounds.  Plaintiffs' Amended Complaint will, accordingly, be dismissed without prejudice for lack of subject matter jurisdiction.

## II.  BACKGROUND

### A. Factual and Procedural Background

Because resolution of the pending motion relates inextricably to the procedural posture of this litigation, the Court will discuss the factual predicate[1] and procedural circumstances of this litigation in unison.

#### 1. S.D.'s Disabilities

S.D., an eleventh-grade student at Haddon Heights Junior/Senior High School, suffers from "multiple medical problems including chronic sinusitis with frequent acute exacerbations, allergic rhinitis, and intermittent asthma," all of which "make it likely that he will have frequent" school absences and tardiness "due to [his] acute [] underlying chronic

---

[1] The facts set forth herein are drawn from the Amended Complaint and its exhibits, which the Court accepts as true for the purposes of the pending motion.

4

illness." (Am. Compl., Ex. C.) On October 24, 2012, Plaintiff's physician, Dr. Wendy S. Cook, D.O., therefore advised that S.D. "should qualify for 504 plan modifications for school" and "should be excused for absences/lateness due to his illness." (Id. at Ex. A.)

### 2. Section 504 Accommodation Plans for the 2012-2013 and 2013-2014 Academic Years

For the remainder of the 2012-2013 school year, Defendant, accordingly, developed a 504 Accommodation Plan, in consultation with Plaintiffs, on October 25, 2012 (hereinafter, the "initial 504 Plan"). (See Am. Compl. at ¶¶ 24-25, 29-30.) The initial Section 504 Plan provided S.D. with "extra time for assignments, tests, and quizzes when absent," and directed Plaintiffs "to communicate" with S.D.'s teachers concerning "any missed work" and absences. (Am. Compl., Ex. A at 2.) Despite these accommodations, however, Plaintiffs allege that the initial 504 Plan failed to "impose any enforceable obligations" upon Defendant and its teachers, and provided no mechanism for S.D. "to be instructed in and learn the material" missed during his absences. (Am. Compl. at ¶ 31.) Rather, the initial 504 Plan purportedly required that S.D. instead learn the materials on his own. Plaintiffs, accordingly, requested a follow-up 504 meeting, in light of their concerns that the initial 504 plan proved ineffective and too poorly implemented to enable him to

meaningfully participate in and benefit from the educational
opportunities offered by Defendant to other students.  (Am.
Compl. at ¶¶ 9, 31.)

Defendant thereafter convened a 504 meeting on April 19,
2013, and developed an amended 504 Accommodation Plan
(hereinafter, the "amended 504 Plan").  (Id. at ¶ 33-34.)  The
amended 504 Plan continued to provide S.D. "extra time to
complete assignments," but required all assignments to "be
completed within two weeks from [S.D.'s] return from absence,"
allowing teachers to reduce S.D.'s assignments at their
discretion.  (Am. Compl., Ex. B.)  In addition, the amended 504
Plan directed S.D.'s teachers to "send weekly updates"
concerning missing assignments and to provide class notes and,
if possible, background information and/or discussion materials
concerning information covered in class.  (Id.)  The amended 504
Plan further imposed various, purportedly onerous
"responsibilities," by requiring S.D. to create lists in order
to track assignments and to maintain folders to segregate
complete and incomplete work, and directed him to meet,
regularly, with his teachers and guidance counselor.  (Id.; Am.
Compl. at ¶ 39.)

Plaintiffs, however, allege that the amended 504 Plan
similarly failed to provide any "mechanism" or "firm or
enforceable directive" to ensure that S.D.'s teachers provided

6

class notes and/or exercised their discretion to reduce assignments. (Am. Compl. at ¶ 44.)  Plaintiffs further allege that the amended 504 Plan failed to ensure that S.D. received supplemental or alternative instruction (namely, home instruction), "to enable him to keep up with the curriculum, [to] complete his assignments in a timely manner," and to otherwise enjoy the benefits of, and access to, the educational opportunities offered by Defendant to S.D.'s "typical peers." (Am. Compl. at ¶¶ 35, 41, 46.)  Rather, Plaintiffs allege that the amended 504 Plan continued to require S.D., in effect, "to teach himself the curriculum and to [] identify and understand assignments" explained by teachers in his absence—only causing S.D. to fall "further and further behind" in his academic assignments. (Id. at ¶ 46.)

### 3. Defendant Enacts a New Attendance Policy

The attendance policy in effect for the 2012-2013 academic year prohibited a student from earning credit for a course in which the student accrued more than 15 absences, unless the student provided a "medical note from a physician" to substantiate and excuse the excess absences.[2]  (Am. Compl., Ex. D.)  The policy provided that "[w]arnings will be issued" to the students "in danger of exceeding the 15-day limit," but

---

[2] In order to be considered excused, however, the policy required a doctor's note to be submitted "within 60 days of lateness or absence."  (Id. at Ex. E.)

cautioned that accruing absences in excess of the maximum would result in the student being placed in non-credit status.  (Id. at Ex. E.)  Moreover, the policy required any student over the 15-day absence maximum to attend "Saturday Credit Completion" for each day over the prescribed limited, or risk the loss of credits for the missed course.  (Id.)

"Due to his chronic medical issues, S.D. had over 33 absences during the 2012-2013 school year."  (Am. Compl. at ¶ 48.)  Despite such absences, however, S.D. purportedly earned the credits necessary "for yearly promotion to the Grade 10 Sophomore Class."  (Id. at ¶ 48-53.)

In the summer of 2013, Defendant enacted a new attendance policy, as follows:

> **STUDENTS ARE LIMITED TO A TOTAL OF 33 ABSENCES IN A SCHOOL YEAR (THIS LIMIT INCLUDES ANY ABSENCE, INCLUDING APPROVED, EXCUSED AND UNEXCUSED ABSENCES) EXCEPT WHEN HOME BOUND INSTRUCTION IS APPROVED BY THE DISTRICT'S SCHOOL PHYISICIAN.  STUDENTS WITH MORE THAN 33 ABSENCES WILL BE RETAINED.**

(Id. at ¶ 53; see also Am. Compl., Ex. E.)  The new policy, however, left undisturbed Defendant's existing Saturday Credit Completion program.  Plaintiff therefore alleges that Defendant "made a deliberate choice to enact the Policy," in order to "target" students, like S.D., "with frequent excused absences," and "never" offered the only exception to the new policy, home

instruction, as an accommodation, despite S.D.'s frequent "medically-excused" absences.  (<u>Id.</u> at ¶¶ 54-56, 65.)

### 4. The 2013-2014 School Year

On September 30, 2013, Defendant prepared a 504 Plan for S.D.'s 2013-2014 academic year—a plan that "simply repeated" the amended 504 Plan "virtually verbatim," despite the new 33-maximum-absence attendance policy.[3]  (Am. Compl. at ¶ 40.)  As the academic year progressed, however, S.D. quickly accumulated fifty-eight (58) <u>total</u> absences for the 2013-2014 school year. (<u>Id.</u> at ¶ 66.)

On March 13, 2014, Ronald F. Corn, the Principal of S.D.'s High School, thereafter informed Plaintiffs that Defendant's "records show that [S.D.] . . . accumulated **<u>thirty-seven (37) unexcused absences</u>** for the present school year," and that Defendant, accordingly, intended to retain S.D. for the 2013-2014 school year.  (<u>Id.</u> at ¶¶ 74-76 (emphasis in original).)  In so deciding, Mr. Corn referenced Defendant's new "attendance policy mandating retention of any student absent more than thirty-three (33) times for any reason" (<u>id.</u> at ¶ 75), and

---

[3] Following the September 2013 Section 504 meeting, Plaintiffs filed a complaint with the United States Department of Education, Office of Civil Rights (hereinafter, the "DOE"), seeking relief from the discriminatory impact of the policy. The DOE, however, dismissed Plaintiffs' complaint, because it sought relief for "prospective" discrimination—presumably because Plaintiffs argued, as here, that Defendant's new attendance policy would inevitably result in S.D.'s automatic retention.  (Am. Compl. at ¶¶ 71-72.)

directed Plaintiffs to promptly contact his office in order "to develop a plan of action for the remainder of the school year." (Ex. F [Docket Item 4-7].)[4]  Rather than contact Mr. Corn, however, Plaintiffs filed the initial Complaint in this litigation on March 25, 2014.[5]

Nevertheless, Defendant scheduled a 504 meeting for March 24, 2014, in order "to discuss ways [to] accommodate [S.D.] regarding time missed for attendance for absences related to [his] underlying disability."  (Am. Compl., Ex. F.)  Defendant, however, purportedly failed to provide Plaintiffs with the requisite notice, and "refused" to reschedule the meeting

---

[4] The Court will consider Mr. Corn's letter.  It is axiomatic that the Court generally may not, in resolving a motion to dismiss under Rule 12(b), consider "matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Here, as stated below, the Court need not cabin its review solely to the pleadings and its exhibits.  However, even if such constraint applied, the Court may consider a public record or a "'document integral to or explicitly relied upon in the complaint,'" if such document forms the basis for the complaint.  In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (citations and emphases omitted).  Consequently, because Plaintiffs predicate their Amended Complaint, in part, upon Mr. Corn's correspondence, such correspondence may properly be considered in connection with the pending motion. (See, e.g., Am. Compl. at ¶ 74.)  The Court, accordingly, reviewed the letter (in its entirety) from Plaintiffs' submissions in connection with Plaintiffs' earlier motion for preliminary injunction.  (See Ex. F [Docket Item 4-7].)

[5] Plaintiffs simultaneously filed an additional complaint with the DOE, in light of the fact that Defendant had at that time purportedly taken "affirmative action to discriminate against S.D. on the basis of his disability by retaining him."  (Id. at ¶ 83.)

despite Plaintiffs' request.  (Am. Compl. at ¶ 86.)  Rather,
Defendant convened the meeting, despite Plaintiffs' absence, and
provided Plaintiffs with a revised 504 Plan on April 14, 2014.
(Id. at ¶ 85.)  The revised 504 Plan required that S.D. make up
excused "absences related to [his] underlying disability" by
attending "Saturday school for credit reinstatement" or by
"homebound instruction."  (Am. Compl., Ex. F.)

Plaintiffs, however, allege that the revised 504 Plan still
failed to provide an appropriate education, because "simply
logging" extra hours in the last six weeks of the school year
purportedly failed to provide S.D. "with the targeted
instruction intended to provide him with equal opportunity to
benefit from Defendant's educational program." (Am. Compl. at ¶¶
91-93.)  Plaintiffs further allege that the "credit
reinstatement process" serves as a punitive, rather than
educational, substitute for in-class instruction, given that
Defendant created such process "for students who are repeatedly
truant from school for no identifiable reason deemed worthy of
excuse."  (Id. at ¶ 94.)  Plaintiffs, accordingly, assert that
these additional efforts similarly failed to provide an
appropriate and enforceable mechanism "to deliver [the]
supplemental instruction and guidance" necessary for S.D.'s
education.  (Id. at ¶ 95.)

### 5. Motion for Preliminary Injunction and the Parties' July 2014 Settlement Agreement

Despite Defendant's policy of automatic retention for excessive absences, S.D. purportedly earned sufficient credits in his 2013-2014 courses for promotion to Grade 11. (Id. at ¶ 87.) Given S.D.'s allegedly inevitable retention under the new attendance policy, Plaintiffs filed for a motion for preliminary injunction on April 11, 2014. In their motion, Plaintiffs requested that the Court enjoin Defendant from enforcing "its policy to retain students based [] solely [upon] the student's number of total absences," including absences excused for medical reasons, thereby enabling S.D. to Grade 11. (Pls.' Br. [Docket Item 4-10], 19.)

On June 18, 2014, however, the parties reached a settlement that resolved the issues presented in the motion for preliminary injunction without Court intervention. Specifically, "in order for S.D. to be promoted to Grade 11," Plaintiffs agreed to retake, at Plaintiffs' expense, an online drivers' education course that S.D. had already mastered. (Am. Compl. at ¶¶ 96-97.) Plaintiffs, however, agreed to such terms "without waiving any rights or making any admissions with respect" to the Settlement's requirements, and specifically allege that such requirements amplified, rather than diminished, Defendant's purported discrimination. (Id. at ¶¶ 96-100.)

12

Indeed, as alleged in connection with Defendant's earlier accommodations, Plaintiffs assert that the Settlement Agreement (though accepted) failed to "address any harm that results from student absenteeism, whether excused or unexcused," or to provide S.D. with "a free and appropriate public education." (Id.)  Plaintiffs further challenge the Settlement to the extent it required completion of a course "not imposed on typical students," and because it otherwise failed to grant him the opportunity to participate in, and benefit from, educational services equal to that enjoyed by nondisabled students.  (Id. at ¶¶ 100-01.)

Shortly thereafter, Plaintiffs moved to file an Amended Complaint, in order to clarify and supplement Plaintiffs' claims. (See Pls.' Br. [Docket Item 28-3].) In connection with such submission, Plaintiffs specifically asserted that the parties' resolution of the "immediate issues of irreparable harm" raised in the motion for a preliminary injunction did not "resolve[] the dispute in its entirety." (See id. at 1.) Defendant filed no opposition, and the Court, accordingly, granted Plaintiffs' motion on August 19, 2014.  [Docket Item 29.]

### 6. Plaintiffs' Amended Complaint

In the six-count Amended Complaint, Plaintiffs allege that Defendant's various proposed accommodations from September 2012

through the present subjected S.D. to discrimination due to the nature and severity of his disability, by denying him the meaningful opportunity to engage in and access the educational program and services, in violation of the RA, the ADA, and NJLAD.  (Am. Compl. at ¶¶ 102-13, 133-39.)  In addition, Plaintiffs allege that Defendant enacted the new attendance policy in retaliation for Plaintiffs' engagement in protected activity, namely, filing this litigation and complaints before the DOE, in violation of the First and Fourteenth Amendments under 42 U.S.C. § 1983, the RA, the ADA, and the NJLAD.  (Id. at 114-32, 140-44.)  In light of Plaintiffs' discrimination and retaliation claims, Plaintiffs seek:

1. A finding that S.D.'s October 2012 Section 504 Plan, April 2013 Section 504 Plan, September 2013 Section 504 Plan, and March 2014 Section 504 Plan were inappropriate;
2. A finding that the Board failed to implement S.D.'s October 2012 Section 504 Plan, April 2013 Section 504 Plan, September 2013 Section 504 Plan, and March 2014 Section 504 Plan;
3. A finding that the new attendance policy discriminates against students with disabilities in violation of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act;
4. A finding that the Board discriminated against S.D. by requiring him to take an additional, non-educational course to achieve promotion to Grade 11;
5. A finding that the Board impermissibly retaliated against Plaintiffs by enacting the new attendance policy, retaining S.D. in Grade 10, and requiring that Plaintiffs pay for and S.D. complete the online course to secure promotion to Grade 11;

6. An Order enjoining the Board from retaining S.D. in
   Grade 10 Sophomore Class for the 2014-2015 school
   year on the basis of the new attendance policy;
7. An Order enjoining the Board from applying the
   Policy to retain S.D. solely on the basis of the
   total number of his excused absences at any time;
8. An award of compensatory education for the
   instruction S.D. missed as a result of his
   inappropriate Section 504 Plans during 2012-2013 and
   2013-2014 school years; and
9. An award of compensatory and punitive damages for
   Defendant's alleged violations of federal and state
   laws, in addition to an award of reasonable
   attorneys' fees.

(See Am. Compl. at 27-28 (setting forth the thirteen

precise forms of requested relief).)  Defendant's pending

motion followed shortly thereafter.

## III. STANDARD OF REVIEW

In this action, Defendant moves to dismiss Plaintiffs'

Amended Complaint for lack of subject matter jurisdiction under

Rule 12(b)(1) and for failure to state a claim under Rule

12(b)(6).  When a party moves to dismiss under more than one

Rule 12 ground, the Court must first consider the Rule 12(b)(1)

challenge, "because if it must dismiss the complaint for lack of

subject matter jurisdiction, all other defenses and objections

become moot." In re Corestates Trust Fee Litig., 837 F. Supp.

104, 105 (E.D. Pa. 1993).

### A. Rule 12(b)(1)

Because federal courts are courts of limited jurisdiction,

the party seeking to invoke the court's jurisdiction bears the

burden of proving the existence of subject matter jurisdiction.

See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(b)(1) therefore enables a party, as here, to move to dismiss a complaint for lack of subject matter jurisdiction.

Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of a jurisdictional fact).  Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).  In considering a factual attack, as here, the Court's inquiry is not confined to allegations in the complaint. Rather, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997); see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir. 1977).

Article III of the United States Constitution requires that "an actual controversy must be extant at all stages of [the Court's] review, not merely at the time the complaint is filed." Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 247 (3d Cir. 2013) (quoting Genesis Healthcare Corp. v. Symczyk, ___ U.S. ____, 133 S.Ct. 1523, 1528 (2013)).  Exhaustion of applicable administrative remedies is similarly required in order for the Court to exercise subject matter jurisdiction. See, e.g., D.E. v. Central Dauphin Sch. Dist., 765 F.3d 260, 274

16

(3d Cir. 2014) (generally noting that exhaustion constitutes a prerequisite to the district court's subject matter jurisdiction).

Consequently, mootness and ripeness arguments, as here, present factual (rather than facial) challenges to the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  See Holland v. N.J. Res. Corp., No. 12-07858, 2013 WL 4780763 at *1 n. 2 (D.N.J. 2013); Gordon v. East Goshan Twp., 592 F. Supp. 2d 828, 837 (E.D. Pa. 2009). Consequently, the Court need not credit the allegations set forth in Plaintiffs' Amended Complaint, and may instead consider matters extraneous to the pleadings, if necessary.  See Gould Elecs. Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).

**B. Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), by contrast, the court must "'accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief.'" Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (citations omitted).

IV.  **DISCUSSION**

  **A. The Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims**

  **1. Plaintiffs' Claims Are Not Moot**

Defendant argues that, as a result of the parties' July 2014 Settlement Agreement and S.D.'s most-recent 504 Plan, S.D.'s disability-related absences no longer affect his eligibility for promotion to the next grade, and that Defendant has begun to provide S.D. with home instruction in order "to make up for instruction he misses" on account of his "chronic health condition or disability." (Def.'s Reply[6] at 2-3.) Defendant therefore argues that no real case or controversy exists in this litigation, in light of the fact that the attendance policy no longer disparately impacts S.D., and because Defendant allowed S.D. to advance to Grade 11.  (Def.'s Br. at 11-12.)  The Court, however, finds Defendant's position without merit.

---

[6] Defendant filed its reply brief under seal, without contemporaneously filing a motion to seal in accordance with Local Civil Rule 5.3.  On November 26, 2014, the Clerk of Court therefore directed Defendant to "submit a certification stating that this document is to be marked Confidential" or that Defendant restricted its access "in error."  Defendant filed no such submission.  Having reviewed Defendant's reply, the Court does not find that it contains any information necessitating any restriction on public access.  Indeed, the submission largely reiterates the publicly-available information set forth in Defendant's opening submission, and does not otherwise contain confidential and/or identifying information concerning S.D., the minor Plaintiff.  Consequently, the Court will direct the Clerk of Court to unseal the submission.

18

Indeed, the allegations of the Amended Complaint extend far beyond the narrow issues of absence counting under the new attendance policy and S.D.'s promotion to Grade 11. (See Pl.'s Opp'n at 6.)  Rather, the crux of Plaintiffs' Amended Complaint concerns Defendant's repeated development of purportedly ineffective, discriminatory, and poorly implemented Section 504 plans from September 2012 through the present; Defendant's allegedly retaliatory enactment and discriminatory application of the new attendance policy; and Defendant's purportedly retaliatory requirement that Plaintiffs meet advancement standards (namely, the online driver's course required by the Settlement Agreement) not required of other students. (See Am. Compl at ¶¶ 102-44; see also Pls.' Opp'n at 5-6 (summarizing the nature of Plaintiffs' claims).)  In connection with such claims, Plaintiffs seek specific findings concerning the propriety and implementation of each 504 plan developed for S.D. (See Am. Compl. at 27-28 (delineating the relief requested by Plaintiffs' Amended Complaint).)  Moreover, Plaintiffs' retaliation claims rest, in part, upon the purportedly retaliatory terms of the Settlement Agreement. (See generally Am. Compl. at 27-28.)

Consequently, though the parties' Settlement Agreement may have partially resolved the effect of certain of the alleged violations of S.D.'s civil rights, the Agreement does not, by itself, resolve Plaintiffs' allegations concerning "two years of

discriminatory treatment," nor does it dispose of Plaintiffs' contentions that Defendant enacted the new attendance policy and required Plaintiff "to pay for and meet additional requirements" not imposed upon other students, in retaliation for Plaintiffs' litigation efforts.  (See Pls.' Opp'n at 6, 9.)

In addition, the Court notes that Plaintiff specifically argued in connection with Plaintiffs' motion to amend that the Settlement Agreement "resolved the immediate issues of irreparable harm" with regard to S.D.'s advancement to Grade 11, but did not resolve "the dispute in its entirety." (Pl.'s Br. [Docket Item 28-3].)  Despite Plaintiffs' assertion, however, Defendant did not oppose the filing of Plaintiffs' proposed Amended Complaint on futility grounds, nor file any opposition. Given these procedural circumstances, Defendant cannot be heard to dispute the ripeness of Plaintiffs' claims in the aftermath of the parties' Settlement Agreement.  At most, the Settlement Agreement resolved—and the parties cannot relitigate—the mechanism for S.D.'s promotion to Grade 11, while not purporting to resolve other claims in this case.

Consequently, for all of these reasons, the Court rejects Defendant's assertion that Plaintiffs' claims should be dismissed on justiciability grounds, and turns to the parties' positions concerning the need for administrative exhaustion in this litigation.

## 2. Plaintiffs' Claims Require Compliance with the IDEA's Administrative Process

Defendant also argues, in this non-IDEA action, that Plaintiffs' claims must be dismissed for failure to first exhaust the IDEA's exhaustion requirements. (See Def.'s Br. at 16-21; Def.'s Reply at 5-9.)  In that regard, Defendant insists that Plaintiffs must "fully exhaust" the IDEA's administrative remedies because Plaintiffs seeks relief "available under the IDEA." (Id.)  Plaintiffs counter, however, that no such exhaustion requirement applies because "they simply do not seek any relief" available under the IDEA, nor could S.D. claim entitlement to such relief.[7] (Pls.' Opp'n at 10-12 (arguing that "S.D. is not a student subject to the IDEA").)  Rather, Plaintiffs argue that this action concerns theories of recovery separate and distinct from those provided under the IDEA.[8]  In the alternative, Plaintiffs insist that exhaustion would be

_____

[7] Plaintiffs do not dispute that they did not pursue administrative remedies under the IDEA prior to proceeding with this federal litigation. (See generally Pls.' Opp'n.)
[8] "The IDEA governs the affirmative duty to provide a public education to disabled students, while the ADA and RA embody the negative prohibition against depriving disabled students of public education." C.G. v. Pa. Dep't of Educ., 734 F.3d 229, 234 (3d Cir. 2013) (citation omitted).  The IDEA therefore provides a remedy for "'inappropriate educational placement decisions, regardless of discrimination,' while the ADA and RA prohibit and provide a remedy for discrimination." Id. (citations omitted).  Despite this, the statutes are, in practical application, substantively identical. See D.K. v. Abington Sch. Dist., 696 F.3d 233, 254 n.8 (3d Cir. 2012) (noting the substantive identity).

futile, thereby excusing any applicable exhaustion requirement. (Id. at 13.)

### i.     Statutory Framework of the IDEA

At the outset, the Court addresses Plaintiffs' threshold assertion that S.D. does not constitute "a child with a disability that adversely affects his educational performance," as required to fall under the purview of the IDEA.[9]  (Pls.' Opp'n at 12.)

In that regard, the Court notes that the IDEA aims to "'ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs.'"  Batchelor v. Rose Tree Media School Dist., 759 F.3d 266, 271 (3d Cir. 2014) (quoting 20 U.S.C. § 1400(d)(1)(A)); see also 20 U.S.C. § 1415(a) (emphasis added). The IDEA, in turn, defines "child with a disability" to mean

> a child with intellectual disabilities, hearing
> impairments (including deafness), speech or language

---

[9] The Court could, arguably, have viewed Plaintiffs' assertion as an argument concerning the purported futility of pursuing administrative remedies, e.g., as an argument that such remedies would be unproductive because the administrative hearing officer would promptly find that S.D. does not have a qualifying disability, thereby eroding any potential benefits of such process.  (See Pls.' Opp'n at 13 (discussing this argument).) The Court, however, finds this issue appropriate to consider at the beginning of the analysis, for if there could be no dispute that S.D. would invariably be found ineligible under the IDEA, any remaining discussion of the IDEA and/or its exhaustion requirements would appear unnecessary.

> impairments, visual impairments (including blindness),
> serious emotional disturbance (or referred to in this
> chapter as "emotional disturbance"), orthopedic
> impairments, autism, traumatic brain injury, <u>other
> health impairments</u>, or specific learning disabilities;
> and who by reason thereof needs special education and
> related services.

20 U.S.C. § 1401(3)(A) (emphasis added).  The IDEA similarly

defines "other health impairments" as

> having limited strength, vitality or alertness,
> including a heightened alertness to environmental
> stimuli, that results in limited alertness with
> respect to the educational environment, that—(i) [i]s
> due to chronic or acute health problems, including but
> not limited to a heart condition, tuberculosis,
> rheumatic fever, nephritis, <u>asthma</u>, sickle cell
> anemia, hemophilia, epilepsy, lead poisoning,
> leukemia, diabetes, attention deficit disorder or
> attention deficit hyperactivity disorder or Tourette
> syndrome; and <u>[a]dversely affects a student's
> educational performance</u>.

34 C.F.R. § 300.8(c)(9)(i)-(ii).  Disability under the IDEA

therefore extends beyond solely students with learning

disabilities, and expressly includes health impairments that

limit a student's ability to attend regular classes and which

adversely affect his or her educational performance.  In

<u>Batchelor</u>, the Third Circuit has held that the IDEA governs

actions seeking relief that could be obtained under the IDEA,

regardless of the statutory basis of the claims pleaded in the

complaint, 759 F.3d at 274-75.

Here, Plaintiffs allege that S.D. suffers from acute and

chronic medical problems, including sinusitis, allergic

rhinitis, and asthma. (<u>See</u> Am. Compl., Ex. A.)  Plaintiffs

23

further allege that such conditions adversely impact his ability to learn, and necessitate frequent school absences. (See Am. Compl. at ¶¶ 3-4, 26-27, 56.) In light of these conditions, the amended Section 504 plan expressly provided S.D. with "the right to 10-15 minute breaks during the day," presumably due to the fact that S.D.'s conditions result, on occasion, in his diminished vitality. (Id. at ¶ 38.) In that regard, Plaintiffs' own allegations concede the presence of both statutory prerequisites for the IDEA's application, namely, a qualifying disability (here, asthma[10]) that adversely affects educational performance (here, by impacting S.D.'s ability to learn and attend school) and requires special accommodation.[11]

---

[10] Asthma constitutes a condition expressly identified as a qualifying condition under the IDEA. See 34 C.F.R. § 300.8(c)(9)(i)-(ii) (identifying "asthma" as a qualifying condition). There is, however, no indication that sinusitis and/or allergic rhinitis, S.D.'s other conditions, would not similarly qualify. Nevertheless, because the regulations promulgated under the IDEA expressly identify asthma as a qualifying condition, the Court need not address S.D.'s additional health impairments.

[11] For the same reasons, the Court finds the record sufficiently supportive at this time of the inference that S.D's impairment may require a "special education and related services." 20 U.S.C. § 1401(3)(A); see also D.S. v. Neptune Twp. Bd. of Educ., 264 F. App'x 186, 189 (3d Cir. 2008) ("Written in the conjunctive, the [IDEA] should not be read to protect children with an impairment but not requiring special education."). Under the IDEA, a "special education" is one "specially designed instruction to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29). However, "no precise standard" governs the determination of whether a student needs a special education, and "well-settled precedent counsels against invoking any bright-line rules for making such a determination."

24

Consequently, the record before the Court supports, at this time, the conclusion that Plaintiffs' Amended Complaint potentially implicates the statutory entitlements of the IDEA.[12] See Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000) (describing a complaint concerning a student with "asthma-related absences" which "interfered with regular [school] attendance" as "relating unmistakably to the evaluation and educational placement of [the student] in the [ ] school system and to the provision of a free appropriate education"); Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 150 (2d Cir. 2002) (finding allegations that student

---

W. Chester Area Sch. Dist. v. Bruce C., 194 F. Supp. 2d 417, 420 (E.D. Pa. 2002).  Here, S.D.'s asserted need for special scheduling and/or home instruction clearly satisfies this minimal standard, and the Court finds Plaintiffs' arguments to the contrary unconvincing.  (See Defs.' Opp'n at 12-13.)
[12] The Court therefore rejects Plaintiffs' assertion that the IDEA has no application to this action, because the FAPE referenced in the Amended Complaint differs from the FAPE required under the IDEA. (See Pls.' Opp'n at 12.) Rather, "there appears to be 'few differences, if any,' between the requirements imposed under Section 504 and those provided under the IDEA." T.F. v. Fox Chapel Area Sch. Dist., No. 12-1666, 2013 WL 5936411, at *9 n.4 (W.D. Pa. Nov. 5, 2013) (quoting W.B. v. Matula, 67 F.3d 484, 492-93 (3d Cir. 1995)), aff'd, 2014 WL 4674635 (3d Cir. Sept. 22, 2014).  Indeed, both evaluate whether the school district provided the education, services, and support necessary in of the student's disabilities.  See D.K., 696 F.3d at 254 n.8 (finding that a FAPE under the IDEA and Section 504 require essentially the same thing, namely, that a school district "'reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits'") (citation omitted).  The Court therefore agrees with Defendant that "the FAPE under the IDEA and Section 504" would appear "essentially the same."  (Def.'s Reply at 6 (citing cases).)

diagnosed with chronic fatigue syndrome and fibromyalgia had "disabling physical ailments that limited her strength, vitality and alertness and made it impossible for her to attend school" adequate to plead a disability under the IDEA).  In so concluding, however, the Court makes no finding as to the merits of any IDEA-related claim on behalf of Plaintiffs, nor has the Court recharacterized Plaintiffs' claims to include an express IDEA claim.  Rather, because the Court has an obligation to prevent circumvention of the IDEA, as stated below, the Court simply rejects Plaintiffs' position that the IDEA lacks any arguable application to this litigation on account of the nature of S.D.'s health conditions.  See, e.g., Batchelor, 759 F.3d at 274-75 (noting that the IDEA applies to actions seeking relief that could be obtained under the IDEA, regardless of the statutory basis of the plaintiff's claims); M.S. ex rel. Shihadeh v. Marple Newtown Sch. Dist., ___ F. Supp. 3d _____, No. 11-5857, 2015 WL 70920, at *4-*5 (E.D. Pa. Jan. 5, 2015) (finding the IDEA implicated by the plaintiffs' RA and ADA claims, despite the lack of any reference to the IDEA in the plaintiffs' amended complaint).  The Court therefore turns to whether the exhaustion requirements of the IDEA apply to Plaintiffs' non-IDEA claims.

### ii.   Application of the IDEA's Exhaustion Requirement

The IDEA requires, in relevant part, that states receiving federal funds "make available a FAPE to children with disabilities" and "implement specified procedural safeguards to ensure children with disabilities and their parents" receive due process.  Batchelor, 759 F.3d at 272.  These safeguards, collectively known as the IDEA's administrative remedies, provide "an elaborate procedural mechanism," which includes "a due process hearing before an administrative official." Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994); 20 U.S.C. § 1415(f).

Congress required plaintiffs to complete the administrative process prior to resorting to federal court, "because allowing a 'claim without requiring exhaustion ... would not only 'render superfluous most of the detailed procedural protections outlined in the statute, but, ... would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.'" M.G. ex rel. LG v. Caldwell-West Caldwell Bd. of Educ., 804 F. Supp. 2d 305, 313 (D.N.J. 2011) (quoting Komninos, 13 F.3d at 778 (quoting Smith v. Robinson, 468 U.S. 992, 1011-12 (1984))).  Exhaustion further

27

affords the education agencies an opportunity "to apply their expertise and correct their own mistakes." Woodruff v. Hamilton Twp. Pub. Sch., 305 F. App'x. 833, 837 (3d Cir. 2009) (citing McKart v. U.S., 395 U.S. 185, 194–95 (1969)).

Consequently, parties may only commence a civil action in district court following "the findings and decision" of an administrative hearing.  20 U.S.C. § 1415(i)(2)(C)(i)-(iii)  At that time, the reviewing court may grant "such relief as [it] determines appropriate," see id., including "attorneys' fees, reimbursement for a private educational placement, and compensatory education." Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 185 (3d Cir. 2009) (internal quotation marks omitted).

Though Plaintiffs' Amended Complaint does not identify a claim under the IDEA, in Batchelor v. Rose Tree Media School District, 759 F.3d at 272, the Court of Appeals found that "[e]xhaustion of the IDEA's administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA."  Indeed, Section 1415(l) of the IDEA expressly provides a rule of construction, which states that:

> [n]othing in this chapter shall be construed to
> restrict or limit the rights, procedures, and remedies
> available under the Constitution, the Americans with
> Disabilities Act of 1990 [42 U.S.C. §§ 12101–12213],
> title V of the Rehabilitation Act of 1973 [29 U.S.C.

28

> §§ 791–794f], or other Federal laws protecting the
> rights of children with disabilities, except that
> before the filing of a civil action under such laws
> seeking relief that is also available under this
> subchapter, the [IDEA administrative process] shall be
> exhausted to the same extent as would be required had
> the action been brought under this subchapter

Id. (quoting 20 U.S.C. § 1415(l)).  This provision therefore

"'bars plaintiffs from circumventing [the] IDEA's exhaustion

requirement by taking claims that could have been brought under

IDEA and repackaging them as claims under some other statute—

e.g., section 1983, section 504 of the Rehabilitation Act, or

the ADA.'"[13]  Id. (quoting Jeremy H. v. Mount Lebanon Sch. Dis.,

95 F.3d 272, 281 (3d Cir. 1996)); see also W.B., 67 F.3d at 495–

96 (citing the legislative history of § 1415(f) as stating that

"parents alleging violations of section 504 [of the

Rehabilitation Act] and 42 U.S.C. § 1983 are required to exhaust

administrative remedies before commencing separate actions in

court where exhaustion would be required under" the IDEA);

Hornstine v. Twp. Of Moorestown, 263 F. Supp. 2d 887, 901-02

---

[13] For that reason, the Court rejects Plaintiffs' assertion that
requiring administrative exhaustion under the IDEA "would
undermine the important federal rights for the disabled
guaranteed by Section 504 and Title II of the ADA." (Pls.' Opp'n
at 13.)  Notably, compliance with an administrative process does
not undermine federally-protected rights, or otherwise bar a
plaintiff from proceeding on the merits of his or her claims.
Rather, it simply constitutes a statutory prerequisite to
pursuing such rights in federal district court, recognizing the
congressional finding that the pursuit of dialogue and review in
the local administrative process is most likely to promptly
resolve the educational dispute without resort to federal court.

(D.N.J. 2003) ("[I]n cases in which it appears that a plaintiff has cloaked an IDEA claim as an ADA, Rehabilitation Act, or Section 1983 action in an effort to avoid application of the IDEA'S distinct exhaustion requirement, courts will require that plaintiff to exhaust the state administrative remedies mandated for IDEA claims"); Hope v. Cortines, 69 F.3d 687, 688 (2d Cir. 1995) (finding claims asserted under the ADA subject to the IDEA's exhaustion requirement, if such claims seek relief available under the IDEA).

Determining whether the IDEA's administrative process must be exhausted prior to bringing claims in federal court therefore turns on "whether the parties could have asserted the claims under the IDEA" and "whether the claim could have been remedied by the IDEA's administrative process." Id. at 273.  In other words, claims under Section 504, the ADA, Section 1983, or any state analogue, will require exhaustion, if such claims seek relief "available under the IDEA." Id.  In that regard, the Court again finds the Third Circuit's Batchelor case instructive.

In Batchelor, the plaintiffs, a mother and son, filed suit against the school district, primarily alleging that the school district retaliated against them "'for their advocacy with respect to [the son's] legally protected right'" to a FAPE. Id. at 270, 274 (citation omitted).  The plaintiffs specifically

30

asserted three claims: retaliation and failure to provide a FAPE under the IDEA; retaliation in violation of Section 504; and retaliation in violation of the ADA.  Id. at 270.  The plaintiffs argued, as here, that they need not exhaust administrative remedies with regard to their Section 504 and ADA claims.  Id.

Upon review of the plain language of the statute—which "affords parents of a disabled child the opportunity to present a complaint 'with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child'"—the Court of Appeals, however, found "a logical path to be drawn" from the claims of retaliation to the school district's failure to provide, and plaintiffs' efforts to obtain, "'a free appropriate public education.'"  Id. at 274-75 (emphasis in original).  Because of the "'unmistakabl[e]'" relationship between the retaliation claims and the provision of a FAPE under 20 U.S.C. § 1415(b)(6), the Batchelor court concluded that such claims must be exhausted under the IDEA. Id. at 274-75.

In the wake of Batchelor, district courts throughout this Circuit have found non-IDEA actions subject to IDEA exhaustion requirements, where the asserted claims bear relation to the IDEA's guarantee of a FAPE.  See, e.g., M.S. ex rel. Shihadeh,

31

___ F. Supp. 3d ____, 2015 WL 70920, at *4-*5 (finding in a non-IDEA action that, under Batchelor, the plaintiffs' ADA and Section 504 claims required IDEA exhaustion); S.B. v. Trenton Bd. of Educ., No. 13-0949, 2014 WL 5089716, at *5 (D.N.J. Oct. 9, 2014) (finding in a non-IDEA action that, under Batchelor, the plaintiffs' claims under the ADA, the RA, and the New Jersey Special Education Statute, required IDEA exhaustion).

Here, as in Batchelor, Plaintiffs' retaliation and discrimination claims are inextricably linked to the key benefit secured by the IDEA—a free and appropriate public education. (See generally Am. Compl.)  Indeed, although discrimination claims may not ordinarily be provided for under the IDEA, see Hornstine v. Twp. Of Moorestown, 263 F. Supp. 2d at 901-02, Plaintiffs' discrimination claims in this instance explicitly center upon the appropriateness of the education provided to S.D. in light of his disabilities.

Indeed, Plaintiffs' Amended Complaint principally alleges that Defendant failed to provide S.D. "the opportunity to participate in and benefit from the educational services and programs," and limited "his enjoyment of the right and opportunity to receive a free, appropriate public education equal to the opportunity enjoyed by his nondisabled or differentially disabled peers." (Id. at ¶¶ 5, 9, 14, 64.)  In so alleging, Plaintiffs contend that Defendant failed to prepare

32

and implement a Section 504 Plan sufficient "to identify the reasonable accommodations necessary to allow S.D. to access the free, appropriate public education," despite the fact that S.D.'s medical disabilities "necessitate frequent excused absences from school."  (Id. at ¶¶ 4, 22, 95, 98.)

Consequently, though couched in slightly varied terms, it is clear that Plaintiffs' allegations principally concern: (1) whether Defendant appropriately identified S.D. as a student with a disability; (2) what constitutes a free appropriate public education for S.D.; and whether, and to what extent, the various accommodations sufficiently addressed S.D.'s right to a FAPE.  (See Am. Compl. at ¶¶ 102-13, 133-39.)  In that regard, Plaintiffs' discrimination claims squarely relate to the core provision of the IDEA: Defendant's obligation to provide a FAPE, and therefore fall within its ambit.  See 20 U.S.C. § 1415(b)(6) (noting that the IDEA applies to "any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to such child") (emphases added); Polera v. Bd. of Educ. Of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 488 (2d Cir. 2002) (finding that the plaintiff's claim for "failure to provide her with the free appropriate public education" sought redress under the IDEA); Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240 (2d Cir. 2008) (rejecting plaintiffs'

33

argument that their claims rested upon unlawful discrimination and not a violation of the IDEA, because the FAPE discrimination claims all could have been addressed within the framework of the IDEA); Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 505 (S.D.N.Y. 2011) (citing a multitude of cases, and finding that "all of [p]laintiffs' claims of discrimination relate to the interplay between [the child's] disability and his education," and therefore require IDEA exhaustion).

Plaintiffs' retaliation claims similarly turn upon the educational placement of S.D. and the enforcement of rights available under the IDEA, namely, the provision of a free and appropriate education. (See id. at ¶¶ 114-32.)  Indeed, Plaintiffs specifically allege that Defendant took "adverse action" as a result of "Plaintiffs' advocacy on behalf of S.D. and their efforts to vindicate S.D.'s right to a FAPE." (Id. at ¶¶ 120-23, 129-32.)  These retaliation claims therefore squarely state the sort of claims that the Court of Appeals in Batchelor found subject to the IDEA's exhaustion requirement.  759 F.3d at 274-75 (finding that a retaliation claim for the school district's failure to provide, and plaintiffs' efforts to obtain, a free appropriate public education must be exhausted under the IDEA before a court may assert subject matter jurisdiction).

34

For all of these reasons, the Court concludes that, under
Batchelor, Plaintiffs' claims fall within the ambit of the IDEA,
and therefore require exhaustion of the IDEA's administrative
remedies.[14]   See Batchelor, 759 F.3d at 274-75 (concluding that
"retaliation claims related to the enforcement of rights under
the IDEA must be exhausted before a court may assert subject
matter jurisdiction"); M.S. ex rel. Shihadeh, ___ F. Supp. 3d
____, 2015 WL 70920, at *4-*5; S.B., 2014 WL 5089716, at *5;
R.S. v. Glen Rock Bd. of Educ., No. 14-24, 2014 WL 7331954, at
*4 (D.N.J. Dec. 19, 2014) (dismissing the plaintiffs' complaint
without prejudice, because failure to first exhaust "would deny

---

[14] Nor does Plaintiffs' assertion of a retaliation claim under 42
U.S.C. § 1983 alter this result.  (See Am. Compl. at ¶¶ 114-23.)
To the contrary, the IDEA exhaustion requirement applies equally
to such claims. See Cave v. East Meadow Union Free Sch. Dist.,
514 F.3d 240 (2d Cir. 2008) (noting that, "[t]he language of
Section 1415(l) of the IDEA is sufficiently broad and
encompasses complaints asserted under any federal statute, as
long as they seek relief available under the IDEA"); Mrs. W. v.
Tirozzi, 832 F.2d 748 (2d Cir. 1987) (finding that the IDEA's
exhaustion requirement is the "same for 42 U.S.C. § 1983 ...
actions" and that the administrative "remedies must be exhausted
prior to instituting a civil action in federal court pursuant to
... § 1983").  Logically, this requirement might similarly
envelop Plaintiffs' state law claim.  However, because the Court
will, as stated below, dismiss Plaintiffs' federal claims for
lack of subject matter jurisdiction, the Court need not reach
this issue.  Rather, given that this case remains in its
pleadings phase, the Court, in its discretion, declines to
exercise supplemental jurisdiction over Plaintiffs' state law
claim.  See 28 U.S.C. § 1367(c)(3); Byrd v. Shannon, 715 F.3d
117, 128 (3d Cir. 2014) (affirming the district court's decision
to decline supplemental jurisdiction over state law claims upon
the dismissal of all federal claims).

administrative personnel an opportunity to exercise their expertise").  The Court next considers whether the circumstances of this action excuse compliance with the IDEA's administrative remedy process.

### iii.   Exceptions to the IDEA's Exhaustion Requirement

Plaintiffs need not comply with the IDEA's exhaustion requirements if "exhaustion would be futile or inadequate," if "the issue presented is purely a legal question," or if "the administrative agency cannot grant relief." Komninos, 13 F.3d at 778 (internal quotation marks and citations omitted).  Here, Plaintiffs argue that, even if their claims fall within the scope of the IDEA's exhaustion requirement, the futility exception applies to the extent Plaintiffs seek monetary relief not available under the IDEA.  (Pls.' Opp'n at 12-13; see also Am. Compl. at 28 (setting forth Plaintiffs' request for an award of compensatory and punitive damages).)

Though compensatory and punitive damages, as sought in this action, "'are not available under the IDEA and cannot be awarded in the context of a Due Process hearing,'" the remedies sought in Plaintiffs' Amended Complaint do not constrain the relief the Court "is authorized to grant." Batchelor, 759 F.3d at 276. Rather, "'the theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply.'" Id. (quoting Charlie F. v. Bd.

of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 992 (7th Cir. 1996)).  Plaintiffs may not therefore "sidestep the exhaustion requirements of IDEA," by seeking monetary damages.  Polera, 288 F.3d at 488.  For these reasons, the Court of Appeals in Batchelor expressly rejected the argument that a demand for monetary damages exempted a plaintiff from exhaustion requirements.  Batchelor, 759 F.3d at 276.

Here, although Plaintiffs seek incidental monetary damages,[15] the genesis of this litigation concerns the interplay between S.D.'s disability and his education.  See Batchelor, 759 F.3d at 278 (noting that the IDEA provides the appropriate mechanism where "'both the genesis and the manifestations of the problems are educational'") (citations omitted).  Moreover, Plaintiffs specifically seek relief in the form of FAPE challenges, including declaratory and injunctive relief, and a "compensatory education," (Am. Compl. at 27-28), recovery

---

[15] Critically, of the thirteen forms of relief requested by Plaintiffs' Amended Complaint, only two forms request monetary damages. (See Am. Compl. at 28.) Moreover, the monetary claims turn upon Defendant's failure, retaliatory or otherwise, to provide a FAPE—a theory that Plaintiffs similarly rely upon in seeking a compensatory education and an array of declaratory findings. (See id. at 27-28.) As stated herein, these monetary requests therefore inextricably relate to Plaintiffs' claims for relief available under the IDEA and require exhaustion.  See Patrick B. ex rel. Keshia B. v. Paradise Protectory & Agric. Sch., Inc., 858 F. Supp. 2d 427, 431-32 (M.D. Pa. 2011) (noting that monetary damages only constitute an excuse for exhaustion where the monetary damages constitute the only form of requested relief, and where some administrative proceedings have occurred).

unequivocally available under the IDEA.  See Sch. Dist. of

Phila. Bd. of Educ., 587 F.3d at 185.  Consequently, compliance

with the IDEA's exhaustion requirement is not excused by

Plaintiffs' request for monetary damages.  See Hesling v. Avon

Grove Sch. Dist., 428 F. Supp. 2d 262, 274-76 (E.D. Pa. 2006)

(finding exhaustion required for plaintiff's entire retaliation

claim, even though the IDEA only provided "some of the relief

sought"); Falzett v. Pocono Mountain Sch. Dist., 150 F. Supp. 2d

699, 705 (M.D. Pa. 2011) (finding that section 1415(l) of the

IDEA "implies that the entire action must be dismissed for lack

of subject matter jurisdiction whenever any part of the dispute

might be resolved at the administrative level") (citation

omitted).

**V.   CONCLUSION**

For all of these reasons, the Court finds that Plaintiffs'

claims fall within the ambit of the IDEA and require exhaustion.

In addition, the Court finds, under the facts presented, that no

exception excuses compliance with the IDEA's exhaustion

requirement.[16] Defendant's motion to dismiss for lack of subject

matter jurisdiction will, accordingly, be granted on exhaustion

grounds.

---

[16] The Court therefore need not reach the Defendant's position
concerning dismissal of Plaintiffs' claims on Rule 12(b)(6)
grounds.  (See, e.g., Defs.' Br. at 22-33.)

Moreover, because Plaintiffs' failure to exhaust deprives this Court of subject matter jurisdiction, Plaintiffs' Amended Complaint will be dismissed in its entirety without prejudice.[17] See Batchelor, 759 F.3d at 281; see also M.A. v. Jersey City Bd. of Ed., ___ F. App'x ____, 2014 WL 6656328, *5 (3d Cir. Nov. 24, 2014) (citing Batchelor, and affirming dismissal of a Section 504 retaliation claim for lack of subject matter jurisdiction due to a failure to exhaust administrative remedies).

An accompanying Order will be entered.


 **March 2, 2015**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge

---

[17] As stated above, having dismissed the federal claims without prejudice, the Court declines to exercise supplemental jurisdiction over Plaintiffs' analogue state law claims. See 28 U.S.C. § 1367(c)(3); R.S., 2014 WL 7331954, at *6.